### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In the Matter of: | Case No. **10-05272-lmj7** |
| **John Robert Hattery,** | |
|       Debtor | |
| **Margo Hattery,** | Adv. Pro. No. **11-30003-lmj** |
|       Plaintiff | [UNPUBLISHED] |
| v. | |
| **John Robert Hattery,** | |
|       Defendant | |

### MEMORANDUM OF DECISION
### (date entered on docket: May 11, 2012)

Plaintiff Margo Hattery ("Plaintiff") filed an 11 U.S.C. section 523(a)(15) complaint to determine dischargeability against Chapter 7 Debtor John Robert Hattery ("Debtor") with respect to a $62,641.83 promissory note that the Debtor executed in her favor—pursuant to an agreement the parties reached after the Iowa District Court for Story County entered its decree in the dissolution of marriage action commenced by the Debtor.  Primarily relying on the fact that the state court ordered the Debtor to hold her harmless on the underlying debt, Plaintiff contends that the Debtor remains responsible for that debt.  Stressing that the agreement was not filed with the state court and that court-approved modifications of property settlements are the exception rather than the rule, Debtor argues that the debt in issue is merely contractual and therefore dischargeable.  Having reviewed the record and the arguments of the parties, the Court enters its decision in favor of the Plaintiff.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(I).

BACKGROUND

On November 7, 2006 the Iowa District Court for Story County entered a twenty-four page decision dissolving the marriage of the Plaintiff and the Debtor. (Plaintiff's Exhibit 1.) The state court awarded neither party alimony or spousal support. In paragraph six on page twenty-two of the decision, the state court awarded the family residence and an adjoining lot to the Debtor subject to the Debtor paying the related first mortgage of $224,335.00 and second mortgage of $57,558.00 and holding the Plaintiff harmless with respect to both mortgages. In paragraph seven on pages twenty-two and twenty-three of the decision, the state court gave the Debtor six months from the date of the decision to obtain a release from State Bank & Trust Co. ("the bank") of the Plaintiff's inherited property of $165,791.00 in a Pershing Investment Account and some $30,000.00 in a certificate of deposit that the bank held as collateral against the parties' indebtedness related to twelve development lots they owned. The state court directed that the Debtor would be awarded the twelve lots if he obtained the release of the assets but, if he was not successful, the lots would be sold to pay off all the related indebtedness and the parties would split equally any net proceeds. The state court further directed that the Plaintiff would have a $200,000.00 judgment against the twelve lots until the bank released her investment account and certificate of deposit. Debtor appealed the decision.

In the opening paragraph of a very detailed letter dated February 22, 2007, Mr. Stephen C. McGill, the bank's president and chief executive officer, reminded the parties that their right to cure their various loans had expired and observed that "[i]nstead of cooperation, I have had urging from both parties to begin the collection procedure as a means to settle this problem and/or damage the other party." (Plaintiff's Exhibit 2 at 1.)  Mr. McGill indicated that the bank would liquidate the portfolio and the certificate of deposit as soon as possible to protect the equity and then would foreclose on the real estate.  He emphasized that the bank was interested in collecting what it was owed rather than in maximizing the value of the assets.

In a letter dated February 27, 2007, Mr. McGill commented in passing on his unsuccessful attempt to broker a compromise between the parties and their legal counsel the day before and then stated "[t]he best way to approach this problem is to split the loans and the collateral for debt servicing purposes.  Any equity issues would have to be handled with a side agreement amongst your selves [sic]." Id. at 5.  He then indicated the bank would be willing to rewrite the loan on the first mortgage (related to the hold harmless debt) in the Debtor's name and to secure it with a conforming first mortgage on the former family residence and adjoining lot.  "The loan would be offered at a rate of 7.25% with a 30 year amortization for a term of 60 months." Id. at 6.  The bank would rewrite the parties' other loans, including the second mortgage (related to the hold harmless debt), in the Plaintiff's name and would secure those with the twelve development lots and her stock portfolio and certificate of deposit.  "The new loan will have a rate of 7.25% fixed for the term of the loan.  The loan term will be for 6 months. We would also agree to an extension of an additional 6 months if any accrued interest is

paid current at that time at a rate of Wall Street Prime fixed for the term." Id.  The bank would require the Plaintiff to quitclaim her interest in the former family residence and adjoining lot to the Debtor and would require the Debtor to quitclaim his interest in the twelve development lots to the Plaintiff.

On April 15, 2007 the parties executed an agreement whereby they split the loans and the collateral as suggested by the bank with one exception not relevant here. (Plaintiff's Exhibit 3.)  In paragraph six of the recitals, they stated that "[t]his agreement is not intended to change the ultimate division of assets and liabilities made by the trial court and/or appellate court." Id. at 1.  In paragraph two of the terms, they agreed that the Debtor would provide the Plaintiff with a mortgage on the family residence and adjoining lot to cover the principal balance of the second mortgage plus accrued interest as of the closing date of the restructured financing with the bank.  The Plaintiff's mortgage would be subordinate to that of the bank, and "[s]aid note will draw interest at the rate required of [Plaintiff] by [the bank] for the refinanced indebtedness, and will be due and payable on the same terms as the refinanced indebtedness." Id. at 2.  In paragraph three of the terms, they indicated that "[n]otwithstanding the transfer of the development lots to [Plaintiff], the parties will each be entitled to receive one-half of the net and available proceeds from the sale of the development lots" after reimbursement of any various related expenses borne by the Plaintiff in the interim. Id.

On June 15, 2007 Debtor signed a promissory note to pay $62,641.83, plus interest at 7.250 per cent per annum, to the Plaintiff.  (Plaintiff's Exhibit 4.)  The payment schedule consisted of "9 interest only payments beginning September 15, 2007, and continuing at quarterly time intervals thereafter.  A final payment of the

unpaid principal balance plus accrued interest is due and payable on November 1, 2009." Id.[1]

On November 15, 2007 the Iowa Court of Appeals affirmed the trial court's decision. In re Marriage of Hattery, No. 06-1889, 2007 WL 3376896 (Iowa App. Nov. 15, 2007) (unpublished). Debtor did not seek further appeal before the Iowa Supreme Court.

On April 28, 2008 Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code. (Case No. 08-01581-lmj13, Docket No. 1.) On Schedule D (Creditors Holding Secured Claims), he listed the mortgage debts he owed the bank and the Plaintiff as not being contingent, unliquidated or disputed. Though the Debtor listed his interest in the family residence and the adjoining lot on Schedule A (Real Property), he no longer was living at that location. On June 27, 2008 the bank filed a motion seeking relief from the automatic stay to initiate foreclosure proceedings against said property. (Case No. 08-01581-lmj13, Docket No. 20.) No interested party objected to the relief sought by the bank. Accordingly, this Court entered an order granting the motion on July 14, 2008. (Case No. 08-01581-lmj13, Docket No. 27.)[2]

On July 25, 2008 Plaintiff filed an 11 U.S.C. section 523(a)(5) complaint to determine that the debt in issue, along with two other debts stemming from the dissolution decree, were nondischargeable domestic support obligations. (Adv. Pro. No. 08-30097-lmj, Docket No. 1.) On February 6, 2009, after conducting a combined

---

[1] At the October 7, 2011 trial, both the Plaintiff and the Debtor testified that the amount set forth in the note was the amount the Plaintiff paid the bank.

[2] At the trial in this proceeding, Mr. McGill testified that the property ultimately sold for $290,000.00. After taking into account principal indebtedness, accrued interest, fees and costs, the bank netted approximately $7,000.00.

confirmation hearing in the Chapter 13 case and trial in the adversary proceeding, this Court sustained the Plaintiff's objection that the plan was not filed in good faith and then dismissed the case sua sponte. (Case No. 08-01581-lmj13, Docket No. 43.)  With respect to the adversary proceeding, this Court entered an order dismissing the proceeding after specifically stating "[w]ith respect to 11 U.S.C. sections 523(a)(5) and 1328(a), remaining balances on the debts in issue would have been dischargeable upon entry of an 11 U.S.C. section 1328(a) discharge in the related Chapter 13 case." (Adv. Pro. No. 08-30097-lmj, Docket No. 14.)

On November 23, 2009 the Iowa District Court for Story County entered a stipulated modification of the November 7, 2006 dissolution decree. (Plaintiff's Exhibit 5.) The stipulated modification did not effect the specific debt in issue in this proceeding but did alter the other two debts that were in issue in the prior adversary proceeding. In its second finding of fact, the state court observed "[t]hat the parties recognize that this is a modification of a property settlement in the Decree, which is not typically subject to modification. However, in the interest of justice and as both parties are in agreement with this proposal, the Court enters the following Order." Id. at 2. In the third paragraph of the order portion of the stipulated modification, after discussing the modification of the other two debts, the state court held "[t]hat all remaining provisions of the Decree of Dissolution of Marriage shall remain in full force and effect the same as if set out in full herein." Id.

On October 27, 2010 Debtor filed a petition for relief under Chapter 7 of Title 11 of the United States Code. (Case No. 10-05272-lmj7, Docket No. 1.) This time he listed the debt in issue on Schedule F (Creditors Holding Unsecured Nonpriority Claims)

but again indicated it was not contingent, unliquidated or disputed. On January 25, 2011 this Court entered a general discharge of debtor's debts. (Case No. 10-05272-lmj7 at Docket No. 14.) In the interim—specifically on January 19, 2011, Plaintiff commenced the pending adversary proceeding. Seemingly overlooking the stipulated modification of the decree in state court and the disposition of the prior adversary proceeding that was based on 11 U.S.C. section 523(a)(5), the Plaintiff set forth the same factual and legal allegations as in the prior adversary proceeding except that she added 11 U.S.C. section 523(a)(15) as an alternative cause of action. (Docket No. 1.) On March 8, 2011 this Court entered an order dismissing the complaint as to 11 U.S.C. section 523(a)(5). (Docket No. 8.) On March 30, 2011, the parties filed their trial stipulation in which they identified the issue as being "[w]hether the [April 15, 2007 agreement] and [the June 15, 2007 promissory note] constitute a debt to a spouse of the Debtor incurred by the Debtor in the course of a divorce or divorce decree and is non-dischargeable pursuant to 11 U.S.C. section 523(a)(15)."

APPLICABLE STATUTORY PROVISION

With respect to a Chapter 7 debtor, 11 U.S.C. section 523 provides that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--

. . .

(15) **to a** spouse, **former spouse**, or child of the debtor **and not of the kind described in paragraph (5)**[3] **that is incurred by the debtor** in the course of a divorce or separation or **in connection with a** separation agreement, **divorce decree** or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

---

[3] 11 U.S.C. section 523(a)(5) excepts domestic support obligations from discharge.

11 U.S.C. § 523(a)(15) (emphasis added).

## DISCUSSION

Plaintiff, who bears the burden of proof by a preponderance of the evidence, contends that the note constitutes a nondischargeable debt either because it is the same obligation as the hold harmless provision in the dissolution decree or because it is a debt arising out of a divorce—even if not explicitly set forth in the dissolution decree. Despite in particular the first contention, the Plaintiff through her attorney curiously indicated both in closing argument and in her post trial brief that she was seeking only an order from this Court that the debt in issue is nondischargeable so that she then could enforce the note in a contempt proceeding in state court. With respect to the second contention, Plaintiff alternatively requested in her trial brief that this Court defer the matter to state court because "should this Court decide that [the note] is not subject to the discharge exception of §523(a)(15), this could have a preclusive effect with regard to the State District Court's ability to make such a determination." (Docket No. 19 at 6.)

Debtor, through his attorney, maintained in both closing argument and in his post trial brief that the agreement did not arise out of the divorce and was not a court-approved modification—unlike the agreement the parties reached regarding the two other provisions in the dissolution decree. Noting that Congress amended 11 U.S.C. section 523(a)(15) in 2005 to ensure that dissolution decrees are enforced in bankruptcy proceedings, Debtor argued that enforcing the agreement would negate the terms of the dissolution decree. He reasoned that it is unknown what would have happened if the bank, in the absence of the agreement and the note, had proceeded

with a foreclosure of the family residence and adjoining lot. Debtor suggests that both hold harmless debts may have been paid in full or that the bank may have decided against pursuing any deficiency.

The Court's analysis of the evidence differs from that of either party. The focus should be on the hold harmless provision in the dissolution decree. The hold harmless provision only pertained to the mortgages against the family residence and adjoining lot. The side agreement, that covered far more than said mortgages, is basically irrelevant to the limited core matter before this court. As for the note—it is simply evidence of the amount of the remaining hold harmless obligation.

Notably, the hold harmless provision falls squarely under section 523(a)(15) because it is a debt owed to a former spouse, is not a domestic support obligation, and was incurred by the debtor in connection with a divorce decree. The bank's actions forced the Debtor to address the hold harmless provision sooner than later. The refinancing structured by the bank resulted in the Debtor satisfying the hold harmless provision as to the first mortgage but not as to the second mortgage. The note reflects what the Plaintiff actually paid the bank to dispose of the second mortgage. Parenthetically, this Court observes that the record is devoid of any "before the fact" evidence of Debtor objecting to Plaintiff promptly paying off the second mortgage on his behalf. Lastly, the stipulated modification of the dissolution decree provides by reference that the hold harmless provision remains in full force and effect.

## CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that Debtor's discharge under section 727 does not discharge the $62,641.83 hold harmless debt in issue.

A separate Order and Judgment shall be entered accordingly.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding